Sidney J. Bush and Laura H., his wife, in right of said Laura H., and Charles H. Carr and Sarah, his wife, in right of said Sarah, Appellants, *v.* John Genther.

*Ejectment—Widow's exemption—Estoppel.*

Where a widow is instrumental in having her husband's administrator sell the land in controversy as her husband's property, and she claims and accepts a portion of the proceeds as her widow's exemption, she and her grantees will be estopped, in an action of ejectment, from asserting her own title and denying that of her husband.

*Deed—Recording of deed—Delivery—Evidence.*

The recording of a deed is prima facie evidence of the delivery of the deed to the grantor, but it is not conclusive; and evidence tending to show that the deed was not actually delivered is admissible in an action of ejectment for the land described in the deed.

Argued Feb. 10, 1896. Appeal, No. 270, Jan. T., 1895, by plaintiffs, from judgment of C. P. Delaware Co., Dec T., 1892, No. 82, on verdict for defendant. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for a lot of ground on the northeast corner of Edgmont avenue and Eleventh street in the city of Chester.

At the trial it appeared that on November 19, 1851, John Larkin conveyed a tract of land of which the lot in controversy was a part to Joseph Burk and William Logan. By deed dated January 2, 1856, for the consideration stated as $1,000, Joseph Burk and William Logan and their respective wives conveyed the lot to Thomas Forsythe, who by deed bearing the same date and for the same consideration conveyed the land to Susan A. Burk, wife of Joseph Burk, and Elizabeth Logan, wife of William Logan. The record showed that these deeds were recorded on March 15, 1856.

The interest of William Logan was sold to Joseph Burk at sheriff's sale to pay a debt contracted prior to January 2, 1856. After the purchase of Logan's interest Burk borrowed money by mortgaging the premises, and with the money erected a house upon a portion of the lot, in which he lived until February 11, 1872, the day of his death.

An orphans' court sale of the lot in question as the estate of Joseph Burk was made by John Cochran, his administrator, for the payment of debts, on May 11, 1872, at which sale Charles D. McClees became the purchaser for $1,625. Cochran conveyed the said lot to McClees by deed dated June 11, 1872, who conveyed the same to George W. Gesner by deed dated March 20, 1873, who conveyed the same to the defendant by deed dated December 18, 1873. The consideration stated in the last mentioned deed was $2,000. The court admitted testimony under objection and exception to show that after the sale of the lot in question for the payment of the debts of Joseph Burk, the administrator had by virtue of an order of the orphans' court mortgaged the adjoining lot (that upon which the dwelling was erected) for $500 to pay a balance due him by his first account, and that out of this the widow, Susan Burk, received $180.30, making with the personal property the full amount of $300 received by her as widow's exemption. [1, 2]

After Joseph Burk's death his wife Susan continued to live and keep house at the same place until her death, August 19, 1891. By her will dated August 14, 1891, she devised and bequeathed all of her estate, real and personal, to her youngest

child, Laura H. Bush, one of the plaintiffs, and who had continued to live with her mother until the death of the latter.

Elizabeth Logan, wife of William Logan, died intestate, January 11, 1858, leaving to survive her her said husband and three children, one of whom, Sarah, afterwards intermarried with Charles H. Carr. She and her husband are also plaintiffs in this case. The other children of Elizabeth Logan died in their minority, unmarried and without issue. William Logan by deed dated October 17, 1892, conveyed his interest in the premises to his daughter, Sarah Carr, who thus claimed to be entitled to a moiety of the premises in possession. Other facts appear by the charge of the court which was in part as follows :

This is an action to try the title to the real estate described in the writ. The plaintiff, or the plaintiffs, rather, in this suit, claim title under the wives of Burk and Logan. The defendant claims title under the husbands, Burk and Logan. You therefore need go back no further than the title of Burk and Logan, as both parties claim under these men. You will, therefore, understand, that so far as the proof of the title is concerned, you need go no further back than the deed from John Larkin to Burk and Logan. They were tenants in common of the property in dispute. For some reason, which does not very clearly appear, they made deeds to their wives through the intervention of a trustee, Mr. Forsythe. These deeds have not been produced and it seems that they have been overlooked in tracing the title until they have recently appeared, but these deeds were recorded, and the effect of the recording of the deeds is to keep them alive forever, so far as the evidence of their existence is concerned. The counsel for the plaintiff is right when he tells you that the destruction of a deed will not revest the title ; many people do not know that, but that is the law. If a man makes a deed to his wife, or to any other person, and delivers it, the parties may come together, they may agree that the title is to go back to the grantor and burn the deed, or destroy it, but that does not take back the title ; the legal title still remains in the person named in the deed ; the equitable title perhaps might remain in him, and to put his title upon the record it would be necessary to take some proceeding to have it vest back again. The principle upon which this point rests is the fact that under our law all titles to property

must appear in writing. We have not got the old common law, where possession could be given by the delivery of a twig and declaring in the presence of neighbors, that he enfeoffed the purchaser with the property; but now, since the invention of writing, both in England and in this country, all the titles to real estate must be evidenced in writing or by descent from a person having good title, or by possession for a certain number of years, which is evidence that there was a title which has been lost or destroyed.

Now, gentlemen, as I was about remarking, this title being in Burk and Logan, for some reason, which has not been very clearly explained, at least, so far as one of the titles is concerned, was made to the wives of these two men, and the deed has been recorded, and the record now, like an angry ghost, comes up to trouble those that made it. It seems that no attention was paid to this afterwards; the deed was made and recorded; and things went on just as if no deed had ever been made, and so they have continued up until after Mrs. Burk's death, and about ten months after her death these old deeds, or the records of them, had been exhumed from their sleeping tomb, and are brought up here to make this disturbance and this trouble; here they are; they live after the parties that made them are dead. These records will continue to live as long as the organization of the government exists. They cannot be gotten rid of; they are there. [This suit is to try the validity of these deeds, and there you have the whole case in a nutshell, the way I gave it to you. This proceeding is really to try the validity of those two deeds, made by the husband, Burk, and the husband, Logan, to their wives, and if after you have duly considered all the evidence and taken your instructions from the court as to the law, you shall come to the conclusion that they conveyed a valid title, which has not been divested by any subsequent proceeding, then your verdict will be for the plaintiffs, Mrs. Bush and Mrs. Carr; but, if after considering all the evidence, and taking the law as it shall be given to you by the court, you shall come to the conclusion that these deeds were either not delivered, because recording is only prima facie evidence of delivery, it is not conclusive, many a deed has been made and put on record before it was delivered, that is, the purchase money not being paid, or for some reason,

The same way with mortgages that are invariably put on record before the money is paid, and if the money was not paid, the record would not be binding. It is prima facie evidence of a delivery, but it is not conclusive.

I say, therefore, after considering all the evidence, and among others, a most important part of the evidence not alluded to by the counsel at all, is the great length of time that these parties have slept upon their assumed rights. A jury may always consider that; the great length of time that the parties here claiming have slept upon their assumed rights may be considered by the jury, and it has a most important bearing upon the other evidence in the cause. People do not sleep for twenty years on their rights. It is a principle of old common law, and it has been handed down to us, and is part of our law, that the law favors the vigilant and watchful, and does not favor the slothful and sleeping. "Vigilantibus non dormientibus jura subveniunt," was the expression used by the old Romans, which means just what I said to you. The law favors the watchful and not the sleepy suitor. You may, therefore, in considering and weighing the evidence, consider the great length of time since these deeds were made, and before which the claim was made. You may consider that in construing the evidence; you may consider all the surrounding circumstances, and if you come to the conclusion that that deed was not delivered, or that these deeds were not delivered, then there is an end to the plaintiffs' case, as to the entire title, both the claim under Mrs. Burk and the claim under Mrs. Logan, but as to Mrs. Logan's deed, there has been, if you are satisfied with the evidence, a divestment of her title, even after the deed had been delivered.] [11]

Now, remember, gentlemen, as I said to you a moment ago, the turning point in the case is the validity of these deeds. You must settle the facts, and you ought to understand them, and it will be the effort of the court to make you understand them, and understand what you have to decide. This title is made up of a claim under two titles—the title of Mrs. Carr and of Mrs Bush is made up of the title that vested in Mrs. Logan and in Mrs. Burk, and therefore they are what we call tenants in common, if their title is good; that is to say, as to one undivided half, the title comes from Mrs. Burk, as to the other undi-

vided half, it comes through Mrs. Logan. Now, as to the undivided half that comes from Mrs. Logan, I will take that up first, because in the opinion of the court, if the jury shall agree with me in the facts, under no event can she recover under that title, and I will tell you why. Take it for granted that that deed had been delivered, it is a deed from the husband to his wife, and the law looks upon all such deeds with suspicion when creditors are concerned. If a man in debt, embarrassed in his financial affairs, makes a deed to his wife, the law presumes that it was made for the purpose of avoiding the payment of his debts, and it makes the wife a trustee of the husband in such a case; if judgment be recovered against the husband which was a subsisting debt at the time the deed was made, a sheriff's sale under that judgment will divest that property, unless the wife can show by clear and satisfactory evidence that she bought the land from her husband with her own money, not derived from him, but from a source entirely independent of him.

[Therefore, gentlemen, if you find from the evidence that the Baker judgment was a debt at the time this deed was made, and the evidence seems to be pretty conclusive on that subject, the record seems to show it, then the sale by the sheriff of the interest of Mr. Logan conveyed to the purchaser a fee simple title, free and discharged of the title of the wife. You will there, I imagine, gentlemen, have but little trouble, so far as the title derived from Mrs. Logan is concerned, in other words, so far as the one undivided one half of that property is concerned.] [12] Now, gentlemen, that is all I deem necessary to say to you upon that subject. I will be asked to charge you that the statute of limitations has not barred the right under the Logan deed. It will not be necessary to pass upon that subject. It has been some thirty-two or thirty-three years since the sheriff's sale, I believe, and nobody has ever questioned the title of Burk, until ten months after his wife's decease. Burk was the purchaser at that sheriff's sale of the Logan title, and if Burk owned the property, then the defendant here owns it, because the defendant's title is from Burk. The plaintiff's title is from Burk's and Logan's wives, Burk being, therefore, the purchaser at the sheriff's sale of the interest of Logan, and Logan's wife; if he was in debt at the time he made the deed to his wife, Burk's title has regularly descended down and is now regularly

vested in Genther. If Burk owned that property, then Genther owns it now. If Mrs. Logan and Mrs. Burk owned it, then one half of it now belongs to the heirs or devisees of Mrs. Burk, and the other half belongs to the heirs or devisees or grantees of Mr. Logan, or it belongs to Mr. Burk, and as I charge you, if you find the judgment under which Burk bought the Logan property was based upon a debt that existed at the time Logan made the deed to his wife, then Burk owned the fee simple to the one undivided half, at least, and that now belongs to Mr. Genther and for that your verdict ought to be for the defendant.

Now, that is all I deem necessary to say to you upon the one undivided half, that is to say the interest of Mrs. Carr.

Now, the great contest in the case is over the one undivided half claimed by Mrs. Bush, as the devisee of her mother.

Gentlemen, I knew no more about this case than you did when it commenced and I may get the names confused, and if I do, the counsel will of course correct me. [I say the principal contest is over the one undivided half claimed by Mrs. Bush as devisee of her mother. That is the principal contest now before you. Her title is good, if the deed from Mr. Burk to his wife of January 2, 1856, was good, and it has not been divested, and was delivered, then Bush's title to an undivided half is good. If you shall find from the evidence, all the evidence in the case, that the idea of the delivery of this deed is inconsistent with the evidence, and you find that the deed had never been actually delivered, then I charge you that the deed is worthless and Mrs. Bush has no title, and in that event your verdict would be for Mr. Genther. If you should pass that question, and find the deed had been delivered now, gentlemen, remember first, you will consider whether this deed had ever been delivered, and if you come to the conclusion that the evidence is inconsistent with that, considering the time that has elapsed, considering the want of a claim, considering the acts of the parties, for they all seem to have ignored that idea, then you can go no further. If you come to the conclusion the deed has never been delivered, although it is recorded, then I say you need go no further, your verdict will be for the defendant, Mr. Genther;] [13] but if you should come to the conclusion that the deed had been delivered, then a very important principle arises, which I will endeavor to explain to you because it is

the principle of estoppel, which is one of the principal questions in the case. An estoppel is a principle of law which estops or prohibits a litigant from setting up the truth as a basis of claim or ground of defense in a suit at law. Several illustrations have been given to you. One of the illustrations in the books, is where three or four men were sued as partners. The defendant came into court and denied that the partnership existed and objected that the partnership had not been sufficiently proved, and the plaintiff took a nonsuit; he then sued individuals. The defendant then came into court and produced the articles of partnership to show that somebody else ought to be sued with him, and the court said no, that is the truth, but when you were sued as a partner you did not admit it; you alleged that you were not a partner; you did not say so, but you asked the court to say to the jury that the partnership had not been sufficiently proved; now he has sued you individually and you cannot set up partnership although the partnership is the truth. So in the illustration given by the counsel for the defendant; if a son, owning a horse represent to a purchaser that it is the property of his father, and the purchaser goes to the father and buys the horse, the son cannot claim it, although he could prove the horse was his; it would belong to the purchaser, because he was led astray; he was thrown off his guard by what the son said. So, gentlemen, whenever one induces another to purchase land from another and to expend money upon it, he cannot set up a title in himself to defeat the title of the purchaser, notwithstanding the true title may be in the person. Now, that is a principle of law that is well settled. Mere silence, however, is not enough where the evidence is open to both. Silence is not enough. Mr. Genther had constructive notice of these deeds; they are of record. He never saw them, but that makes no difference; he could have seen them, and he is presumed to have constructive notice of these deeds; there must be something more, therefore, than mere silence; there must have been some act of encouragement, or some act that would induce a reasonable person to believe that the title was not in the person giving the act of encouragement, but in some other person. Where such acts are proven it is not necessary to prove that there was any fraud. That is not necessary, although acts of encouragement may lead to the purchase, and although these acts of en-

couragement might have been innocent, while there might have
been no fraud in the person who commits these acts of encour-
agement, yet the person doing it is estopped from setting up a
counter title, and estoppel would be good although there was
no actual fraud. In such a case it would make no difference
that the purchaser might have discovered the defect in the title
if he had inquired. If he was thrown off his guard, if he does
not make inquiry because of the act of the person who throws
him off his guard, then the estoppel is complete, and the person
committing it though innocently, cannot recover against the
person thus thrown off his guard.

[Now, in this case, gentlemen, the acts of estoppel referred to
by the defendant were those of Mrs. Burk, the person under
whom Mrs. Bush now claims, and if Mrs. Burk could not re-
cover, neither can Mrs. Bush. If Mrs. Burk had sued for this
property the defendant would have said: "Why, you had this
property sold at your request as the property of your husband,
you threw me off my guard, you claimed that it was your hus-
band's property, you asked the administrator to sell it as your
husband's property, you did more than that, you came in and
claimed part of the purchase money under the statute which
declares that whether solvent or insolvent the widow shall have
$300 out of her husband's estate, and you claimed $180 out of
that purchase money to make up the $300; that is inconsistent
with your claim now that it was your property."] [14]   That
could have been set up against her; it can be set up with equal
force against her devisee; he would have said perhaps: " Why,
you live next door, you knew this property was sold by a decree
of the court as your husband's property, you knew that the
administrator had come into court and stated that the husband
had owned this property and that the court had directed him to
sell it to pay your husband's debts, you knew that; why didn't
you tell the person who bid at this sale and paid a full price for
it, that it was your property? . Again, if that was your property,
Mrs. Burk, and has been your property for so many years, for
nearly thirty years, why haven't you claimed it before, and why
for the last twenty years have you permitted me to expend my
money here and never given me warning that you claim the prop-
erty." Now, these are the acts of estoppel that are alleged
against this woman, and if the jury should come to the conclu-

sion that in equity she should not have the property, against the man she had thrown off his guard, then your verdict would be just as effectual against her devisee; and if you come to the conclusion therefore, even if there had been a delivery and the title was in the woman, if you come to the conclusion that her act of estoppel so threw the purchaser off his guard, Genther had all the rights that McClees had, all the rights that Gesner had; all these rights are in him; all the right that Mr. Burk had he has, and you may also consider, as I say, the length of time that existed between the making of this deed and the claim of title, and if you shall come to the conclusion therefore that there was an estoppel here, that is to say, that Mrs. Burk did something that threw the purchaser McClees or Gesner and Genther off their guard, she cannot set up a title in herself against them.

Now you will see, gentlemen, there are two points as to the Burk title. As to the other undivided half, I have given you my views, and I take it for granted that unless you see something in the testimony that I have not had my attention called to, as to the undivided half derived from Mrs. Logan your verdict will be for the defendant. As to the other undivided half, it will depend upon two questions : first, whether the deed had ever been delivered, and if you find it had not, then your verdict will be for the defendant for the whole; if you find it had been delivered, then you will consider the question of estoppel, whether she has not done something that threw Mr. Genther and the purchasers under whom he claims off their guard; induced them to spend their money. Did she induce them to believe it was her husband's property? If you come to the conclusion that she has, then your verdict ought to be for the defendant in both cases. You will find the facts of course from the evidence, and in most cases it is almost impossible to have positive, clear and direct testimony, which depends for a long time upon surrounding circumstances, upon the general conduct of the people claiming and the general conduct of those under whom they claim. All of these things are to be considered by the jury in weighing the testimony.

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* were, (1, 2) rulings on evidence, quoting the bill of exceptions; (11–14) above instructions, quoting them.

*A. Lewis Smith, Robert N. Simpers* with him, for appellants.
—In Cummings v. Glass, 162 Pa. 241, where the sole question
was the delivery of an unrecorded deed, the court said that the
contention made that the grantor was owner because of his
subsequent payment of taxes, insurance, mortgage money and
other expenses, was only of the slightest value against the abso-
lute deed. Here part of the defendant's case is that Joseph
Burk at least owned a moiety. See also Velot v. Lewis, 102
Pa. 326.

*O. B. Dickinson,* for appellee.—The recording of a deed even
when done by the grantor, is not absolute delivery, but only
evidence of it: Chess v. Chess, 1 P. & W. 32; Harwood v.
Steel, 4 Phila. 88; Boardman v. Dean, 34 Pa. 252.

If one suffers another to purchase and expend money upon a
tract of land, and knows that the other has a mistaken opinion
respecting the title to it, and does not make known his claim,
he shall not afterwards be permitted to set up a claim against a
purchaser. His silence then becomes a fraud: Hill v. Epley, 31
Pa. 331; Maple v. Kussart, 53 Pa. 348; Chapman v. Chapman,
59 Pa. 218; Nass v. Vanswearingen, 10 S. & R. 146; Buchanan
v. Moore, 13 S. & R. 303; Woods v. Wilson, 37 Pa. 379;
Beaupland v. McKeen, 28 Pa. 124; Willis v. Swartz, 28 Pa.
413; Arnold v. Cornman, 50 Pa. 361; Dolph v. Hand, 156 Pa.
91; Putnam v. Tyler, 117 Pa. 570; Young v. Babilon, 91 Pa.
280; M'Kelvey v. Truby, 4 W. & S. 323; Logan v. Gardner,
136 Pa. 588; Logan v. Gardner, 142 Pa. 442; Lewis v. Car-
stairs, 6 Wharton, 193; Com. v. Moltz, 10 Pa. 527; Newman
v. Edwards, 34 Pa. 32; Miller's App., 84 Pa. 391; Couch v.
Sutton, 1 Grant's Cases, 114; Workman v. Guthrie, 29 Pa. 495.

PER CURIAM, March 2, 1896:

This case is by no means free from difficulty, but a careful
examination of the evidence leads us to believe that substantial
justice has been done by the verdict. The proceedings relating
to the claim for exemption by Mrs. Bush, as widow, were admis-
sible. Although the petition was not signed by her, the pro-
ceeding was by her authority and she accepted the money raised
thereby. This was a fact to the benefit of which the defendant
was entitled. The recording of a deed is prima facie evidence of

delivery to the grantee but it is not conclusive. It was competent for the defendant therefore to show such facts as would fairly lead the jury to conclude that the deeds to Mrs. Bush and Mrs. Logan were never delivered. The question was for the jury upon the evidence in this case. None of the assignments of error is sustained. The judgment is affirmed.